UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID W. HILL,

                          Plaintiff,

                          v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

DECISION AND ORDER

18-CV-1161L

**PRELIMINARY STATEMENT**

Plaintiff David W. Hill ("Hill") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. # 1).

On July 2, 2014 and August 6, 2014, respectively, Hill protectively filed applications for a period of disability and DIB and for SSI, alleging disability beginning on July 1, 2012. (Tr. 10).[1] On October 15, 2014, the Social Security Administration denied Hill's applications, finding that he was not disabled. (Tr. 107-22). Hill requested and was granted a hearing before an administrative law judge. (Tr. 123-38). Administrative Law Judge Paul Georger (the "ALJ") conducted the hearing on April 28, 2017, at which Hill and vocational expert Lynelle Hall (the "VE") testified. (Tr. 41-78). In a decision dated September 27, 2017, the ALJ found that Hill was not disabled and was not entitled to benefits. (Tr. 10-32). On September 7, 2018, the Appeals

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 9) utilize the internal Bates-stamped pagination assigned by the parties.

Council denied Hill's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Hill then commenced this action on October 22, 2018, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 12, 19). For the reasons set forth below, Hill's motion (Dkt. # 12) is denied, and the Commissioner's cross motion (Dkt. # 19), is granted. Hill's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Here, the ALJ applied the sequential analysis. At step one, the ALJ found that Hill had not engaged in substantial gainful activity since July 1, 2012 – the alleged onset date. (Tr. 13). At step two, the ALJ determined that Hill had the following severe impairments: anxiety disorder, depressive disorder, and obesity. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations (the "Listings"). (Tr. 13-14).

Next, the ALJ determined that Hill retained the residual functional capacity ("RFC") to lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently, he could sit for six hours, stand for six hours and walk for six hours in an eight-hour workday, and further limited Hill to performing simple routine and repetitive tasks, simple work-related decisions, and to occasional interaction with coworkers and the public. (Tr. 14).[2]

At step four, the ALJ found that Hill could not perform any of his past relevant work. (Tr. 26). Finally, at step five, the ALJ determined that based on the VE's testimony and Hill's age, education, work experience and RFC, Hill could perform other occupations existing in significant numbers in the national economy, specifically, laundry laborer (DOT # 361.687-018), kitchen helper (DOT # 318.687-010), and warehouse worker (DOT # 922.687-058). (Tr. 26-27). Accordingly, the ALJ found that Hill was not disabled under the Act. (Tr. 27-28).

### III. Hill's Contentions

Hill contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Dkt. ## 12, 21). First, Hill argues that the ALJ failed to apply the treating physician rule when evaluating the opinion evidence of Hill's treating psychiatrist, Dr. Maria Nickolova. (Dkt. # 12-1 at 22-25). Second, Hill maintains that the ALJ erred at steps four and five of the sequential analysis by failing to account for Hill's "marked" limitations in adapting or managing oneself in a work setting. (*Id.* at 25-27). Third, Hill contends that the ALJ failed to properly consider Hill's obesity in connection with his ability to perform

---

[2] Although not explicit, the ALJ's RFC suggests he limited Hill to medium work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (describing medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"). The hypothetical posed by the ALJ to the VE at the administrative hearing, and which was ultimately adopted by the ALJ, limited Hill to medium work, and all the jobs identified by the VE and adopted by the ALJ at step five of the sequential analysis were classified as medium work. (*See* Tr. 27, 74-75).

3

work on a regular and continuing basis. (*Id.* at 27-29). I will address each of these arguments in turn below.

IV. **Analysis**

   1. **The ALJ's Evaluation of Dr. Nickolova's Opinion**

I turn first to Hill's argument that the ALJ failed to apply the treating physician rule in discounting the weight assigned to Dr. Nickolova's opinion. (Dkt. # 12-1 at 22-25). Specifically, Hill argues that the ALJ "never gave 'good reasons' for giving limited weight" to this opinion, and "never addressed the factors which were required of him." (*Id.* at 23).

Under the treating physician rule that was applicable at the time the ALJ's decision was rendered,[3] the opinion of a claimant's treating physician is entitled to controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The so-called "*Burgess* factors" include: (1) the frequency of examination and the length, nature, and extent of the treating relationship; (2) the supportability of the physician's opinion; (3) the consistency of the physician's opinion with the record as a whole; (4) the specialization of the physician; and (5) any other factors which

---

[3] Changes to the Social Security Administration's regulations regarding the consideration of opinion evidence will eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c, 416.920c. For purposes of this appeal, however, the prior version of the regulations applies. *See, e.g.*, *Colon Medina v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 295, 301 (W.D.N.Y. 2018) ("[b]ecause [p]laintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule").

support or contradict the medical opinion. *Gunter v. Comm'r of Soc. Sec.*, 361 Fed. Appx. 197, 199 (2d Cir. 2010) (summary order); *see also Estrella*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is not entitled to controlling weight[;] . . . [s]econd, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations and quotations omitted).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source's opinion is a "procedural error." *Estrella*, 925 F.3d at 96. However, if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed, [the court] will affirm." *Id.* (quotations omitted).

Here, Dr. Nickolova completed a mental medical source statement of employability for Hill on May 3, 2016. (Tr. 440-41). The form indicated that Dr. Nickolova had been treating Hill since January 1, 2014, for panic disorder and major depressive disorder. (Tr. 440). Dr. Nickolova opined that Hill was "very limited" in his ability to understand and remember instructions, maintain attention and concentration, maintain socially appropriate behavior without exhibiting behavior extremes, and to function in a work setting at a consistent pace. (Tr. 441). She also opined that Hill was "moderately limited" in his ability to carry out instructions, make simple decisions, interact appropriately with others, and maintain basic standards of personal hygiene and grooming. (*Id.*). Dr. Nickolova did not elaborate on any of these limitations in her medical source statement, except to say that the restrictions were expected to last over twelve months. (*Id.*).

The ALJ reviewed this opinion and assigned it "little weight." (Tr. 20-21, 25). In discounting the opinion's weight, the ALJ recognized that Dr. Nickolova was Hill's treating psychiatrist and stated that the opinion was "inconsistent with the medical evidence of record." (Tr. 25). The ALJ explained that the medical records "consistently indicate[d] that [Hill] had adequate attention, concentration, as well as adequate insight and judgment." (*Id.* (citing Tr. 442-544, 690-794)).

I am satisfied that a searching review of the ALJ's decision demonstrates that he complied with the substance of the treating physician rule.

Specifically, the ALJ clearly was aware of Dr. Nickolova's specialty and of the frequency of examination and the length, nature, and extent of the treating relationship between Dr. Nickolova and Hill. The ALJ thoroughly discussed Dr. Nickolova's treatment notes from January 2014 through January 2017 in his decision and also discussed the treatment notes of Julia Makar, LCSW, who, like Dr. Nickolova, worked at Suburban Psychiatric Associates, LLP, and treated Hill. (Tr. 17-22).

As the ALJ noted, while Hill frequently presented to these treating sources with anxiety, depression and reports of panic attacks, Dr. Nickolova and Ms. Makar also consistently observed that Hill demonstrated a coherent thought process, adequate alertness and full orientation, fair attention span and concentration, and intact memory, judgment and insight. (*See, e.g.*, Tr. 446, 450, 517, 521, 528, 543, 691, 693, 793).

Moreover, the ALJ considered Hill's ability to function socially, despite his complaints of panic attacks in crowded places. (Tr. 25). Specifically, the ALJ noted that Hill "went to Toronto for Mother's Day, attended a concert, and goes to baseball games on a regular basis," and that he "more recently reported that he was on an online dating site, and had been dating." (Tr. 25-26

6

(referencing Tr. 571, 713, 745, 753)). The ALJ also observed that Hill "had no problem attending numerous appointments and he was able to take medications as prescribed." (Tr. 26). These were all proper reasons for the ALJ to consider in weighing the supportability of Dr. Nickolova's opinion. *See, e.g.*, *Cindy C. v. Berryhill*, 2018 WL 4228425, *6 (N.D.N.Y. 2018) (ALJ complied with the treating physician rule and provided "sufficient reasons" for affording "little weight" to opinion of treating physician, "including that [the opinion] was inconsistent with the record and [p]laintiff's daily activities[;] . . . [i]nconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician").

Accordingly, I find that the ALJ's decision as a whole demonstrates that he complied with the substance of the treating physician rule. The ALJ acted within his discretion in finding that Dr. Nickolova's opinion was not supported by her own treatment notes, the record more generally, or Hill's activities of daily living. Therefore, remand is not warranted on this basis.

### 2. Hill's Marked Limitations in Adapting or Managing Oneself

Hill also contends that the ALJ's RFC determination did not account for Hill's "marked limitations" in his ability to "adapt and manage oneself." (Dkt. # 12-1 at 25-27). I disagree.

At step three of the sequential analysis, the ALJ found that Hill's impairments, alone or in combination, did not meet or medically equal a Listing, and explicitly considered Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).[4] (Tr. 13). In making this determination, the ALJ found that Hill had mild limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace, moderate limitations in interacting with others, and marked limitations in adapting or managing oneself. (Tr. 13-14).

---

[4] These listings are reflective of those applicable at the time the ALJ rendered his disability determination on September 27, 2017.

7

With regard to the marked limitations in adapting or managing oneself, the ALJ noted that Hill was able to care for his personal needs, handle his finances, and drive a car. (Tr. 14). Moreover, the ALJ also noted that consultative psychiatrist Janine Ippolito, Psy.D, indicated that upon examination, Hill was well groomed with good personal hygiene. (Tr. 14). However, the ALJ acknowledged Dr. Ippolito's opinion that Hill could "appropriately deal with stress with moderate to marked limitations." (Tr. 14, 433). The ALJ assigned Dr. Ippolito's opinion "great weight." (Tr. 25).

Notably, Hill does not argue that the ALJ erred in making these specific findings, or that his mental impairments met or medically equaled a Listing. Rather, Hill's argument is the ALJ "gave no consideration to the mental limitations he identified at step 3 when formulating his RFC determination." (Dkt. # 12-1 at 27). This argument is meritless, as it is clear that the ALJ, in fact, took these limitations into account in the RFC assessment.

An impairment in adapting or managing oneself refers to "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E)(4). Moreover, a "marked limitation" means that a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis in a particular area is seriously limited." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).

The RFC, as it stands, limits Hill to performing simple, routine and repetitive tasks, and simple work-related decisions, and to only occasional interaction with coworkers and the public. (Tr. 14).[5] Courts have found that such limitations adequately accommodate marked limitations in a claimant's ability to adapt or manage oneself. *See, e.g.*, *Self v. Berryhill*, 2019 WL 825772, *5

---

[5] The VE also testified that Hill could perform the same three occupations identified at step five of the sequential analysis even with the additional limitation of occasional interaction with supervisors. (Tr. 75). Therefore, any error the ALJ committed by failing to include this limitation in Hill's RFC is harmless.

(M.D.N.C.) (ALJ's RFC determination "sufficiently captured [p]laintiff's marked deficit in adapting and managing herself" where ALJ limited plaintiff to "simple, routine, low-stress work with few changes and few decision"), *report and recommendation adopted by* 2019 WL 1227959 (M.D.N.C. 2019); *Thomas R.W. v. Saul*, 2019 WL 5328786, *4 (D. Minn.) (finding that ALJ's RFC, which restricted claimant to, among other things, performance of simple, routine, and repetitive tasks, simple work-related decisions, and no more than frequent interactions with supervisors, coworkers, and the general public, "more than account[ed]" for claimant's mental limitations, including "marked limitations in adapting and managing himself"), *report and recommendation adopted by* 2019 WL 5305494 (D. Minn. 2019).

In addition, the ALJ determined that Hill had marked limitations in adapting or managing himself based on Dr. Ippolito's opinion that Hill experienced issues appropriately dealing with stress in a work setting. "[E]ven without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019). "For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." *Id.* (collecting cases).

Dr. Ippolito opined that Hill, despite his stress limitations, could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitations. (Tr. 433). Based on this evidence, which the ALJ credited, I find that the ALJ adequately accounted for Hill's moderate to marked stress-related limitations, and for his marked limitations in adapting or managing himself. *See*,

9

*e.g.*, *Williams v. Comm'r of Soc. Sec.*, 2018 WL 4443173, *6 (W.D.N.Y. 2018) ("[i]n his decision, the ALJ discussed Brownfield's opinion at length and explicitly acknowledged that Brownfield had assessed that [plaintiff] suffered from significant limitations in her ability to cope with stress[;] . . . [t]he ALJ reasoned that Brownfield, despite assessing that [plaintiff] had difficulty dealing with stress, concluded that she was generally capable of performing simple tasks independently, relating adequately with others, and maintaining attention, concentration and a regular schedule[;] [i]n formulating the RFC, the ALJ thus accounted for Brownfield's assessment by limiting [plaintiff] to simple work involving routine tasks").

In any event, Hill does not indicate what additional limitations the ALJ should have included in the RFC to further accommodate his limitation in adapting or managing oneself.

Accordingly, I find that remand is not warranted on this basis.

### 3. **Consideration of Hill's Obesity**

Finally, Hill contends that the ALJ erred by failing to properly account for his obesity as required by Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281 (Sept. 12, 2002). (Dkt. # 12-1 at 27-29). In Hill's view, the ALJ did not consider his obesity in combination with his other impairments, specifically, testicular hypo activity and depression. More generally, Hill maintains that remand is warranted because the ALJ did not "sufficiently consider [his] obesity as it relates to his ability to work on a regular and continuing basis." (*Id.* at 29). Again, I disagree.

Of course, "obesity is a medically determinable impairment and must be considered in evaluating a [p]laintiff's [RFC]." *Wilson v. Colvin*, 2015 WL 5786451, *30 (S.D.N.Y. 2015); *see also* SSR 02-1p, 2002 WL 34686281 at *1 (directing an ALJ "to consider the effects of obesity not only under the [L]isting but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity").

However, an ALJ need not "explicitly discuss" how obesity affects a claimant's limitations, so long as the ALJ's RFC determination relies on medical evidence that considers a claimant's obesity. *Wilson*, 2015 WL 5786451 at *30 ("an ALJ's [RFC] determination can reflect an appropriate consideration of obesity if it adopts the limitations suggested by physicians who have directly considered the effects of obesity in their opinions"); *Cruz v. Barnhart*, 2006 WL 1228581, *9 (S.D.N.Y. 2006) ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [p]laintiff, the claimant's obesity is understood to have been factored into their decisions.") (quotations omitted).

Here, I find that the ALJ's RFC determination and overall assessment of Hill's alleged disability adequately accounted for Hill's obesity. First, the ALJ found that obesity was a severe impairment at step two of the sequential analysis, even though Hill never claimed in his disability applications that obesity was an allegedly disabling impairment. (Tr. 13 ("Although the claimant does not list obesity as a disabling impairment on its own merits, I note that records throughout the file document the claimant's obesity."); Tr. 80-81, 92-93, 257). Explicitly acknowledging his obligations under SSR 02-1p, the ALJ indicated that his assessment of Hill's RFC took Hill's obesity into account. (Tr. 13).

Although treating sources frequently referred to Hill's obesity throughout the medical record, only one medical opinion offers an opinion regarding functional limitations related to this severe impairment. Consultative examiner Samuel Balderman ("Balderman"), MD, performed an internal medicine examination of Hill on October 7, 2014. (Tr. 435-38). Upon examination, Dr. Balderman noted Hill's weight, 376 pounds, but that Hill was in no acute distress, had normal gait, could walk on his heels and toes without difficulty, could fully squat and had normal stance, used no assistive devices, needed no help changing for the examination or getting on and off the

examination table, and was able to rise from his chair without difficulty. (Tr. 436). Hill's musculoskeletal examination also yielded normal results. (Tr. 437). With a stable prognosis, Balderman's only opinion was that Hill had "mild limitations for sustained physical activities mainly due to poor weight control." (Tr. 438).

The ALJ reviewed this decision, afforded it "great weight," and accordingly limited Hill to medium work, with certain other sitting, standing, and walking restrictions. (Tr. 14, 25). In doing so based on a medical opinion from a source who examined Hill and specifically opined on Hill's obesity, I find that the ALJ adequately accounted for Hill's obesity in the disability determination. *See, e.g.*, *White v. Berryhill*, 753 Fed. Appx. 80, 81 (2d Cir. 2019) (summary order) (no error where ALJ "did not explicitly discuss how [claimant's] obesity affected his limitations" because the ALJ "implicitly factored [claimant's] obesity into his RFC determination by relying on medical reports that noted [claimant's] obesity") (alterations and quotations omitted); *Wilson*, 2015 WL 5786451 at *30 ("The fact that the ALJ determined, based on [treating and consultative] doctors' records, that [p]laintiff had some physical limitations . . . is sufficient for the [c]ourt to conclude that the ALJ considered, albeit indirectly, [p]laintiff's obesity in making his RFC determination."); *Wilson v. Comm'r of Soc. Sec.*, 2014 WL 4826757, *10 (N.D.N.Y. 2014) ("[t]he fact that an item of evidence is not *discussed* does not necessarily mean it was not *considered*[;] [c]ircuit law does not require [ALJs] to single out obesity for discussion in all cases . . . [, and] when an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the claimant, the claimant's obesity is understood to have been factored into their decision") (citations and quotations omitted).

Moreover, I reject Hill's contention that the ALJ failed to consider Hill's obesity in conjunction with other impairments such as depression and testicular hypo activity. As stated

above, the ALJ did, in fact, adequately take into account Hill's obesity through all steps of the disability determination. In addition, while it may be true that the "combined effects of obesity with other impairments may be greater than might be expected without obesity," SSR 02-1p, 2002 WL 34686281 at *6, Hill has not demonstrated that remanding this case would produce a different outcome in this regard. Stated differently, Hill only argues now that his obesity *may* affect his ability to work or concentrate, when considered in conjunction with his depression and testicular hypo activity, but has not pointed to any specific evidence in the record that would compel the ALJ to make such a finding on remand. *See, e.g.*, *White*, 753 Fed. Appx. at 81 ("In any event, because [claimant] never specified how his obesity further limited his functioning, any error on the ALJ's part [by failing to explicitly discuss how claimant's obesity affected his limitations] was harmless."); *Donmore v. Astrue*, 2009 WL 2982982, *4 (W.D.N.Y. 2009) ("[p]laintiff has not demonstrated how an additional analysis of his obesity condition would change the ALJ's decision").

Thus, I find that remand is not warranted on this basis.

## CONCLUSION

Accordingly, for the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. Hill's motion for judgment on the pleadings (Dkt. # 12) is **DENIED**, the Commissioner's cross motion for judgment on the pleadings (Dkt. # 19) is **GRANTED**, and the Commissioner's decision that Hill is not disabled is affirmed in its

entirety. Hill's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 20, 2020.